UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gary L. Pansier and                      Case No. 18-22297-beh
    Joan R. Pansier,

                Debtors.              Chapter 7

**MEMORANDUM DECISION ON THE UNITED STATES'
MOTION FOR RELIEF FROM STAY**

       The United States Internal Revenue Service moved for relief from the automatic stay to reinstate collection of debtor Gary Pansier's pension income and apply those funds to the Pansiers' delinquent tax obligations or, in the alternative, to have the funds held (by either their source or the Court) until the bankruptcy case has concluded.

       The *pro se* debtors objected to the motion. The Pansiers challenge the United States' standing, assert that the IRS has not met its burden to prove cause for relief, and claim that the government made several false statements in its motion.

       The Court held a hearing on the motion on February 20, 2019.[1] After hearing oral argument from both sides and considering the undisputed facts of record, the Court issued an oral ruling granting the United States' motion at the February 20 hearing. The Court now issues this written decision to supplement its prior oral ruling.

---

[1] The Court first held a hearing on January 2, 2019, but counsel for the United States was unable to appear due to the government shutdown and lapse in appropriations, so the Court adjourned the hearing to February 20.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered pursuant to 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The following constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## FACTS

The debtors, Joan and Gary Pansier, are 70 and 82 years old, respectively. They filed this bankruptcy case on March 19, 2018. On Schedule I, they reported the following monthly income, which together totals $7,392.12:

| Source of income | Amount |
|---|---|
| Gary Pansier's Social Security | $1,242.00 |
| Joan Pansier's Social Security | $1,119.60 |
| Gary Pansier's Pension/Retirement Income | $4,047.27 |
| Joan Pansier's Pension/Retirement Income | $983.25 |
| **TOTAL** | **$7,392.12** |

CM-ECF Doc. No. 8, at 23–24.[2]

On Schedule J, they reported total expenses of $5,082.82 (including $1,275 in rent), which results in monthly net income of $2,309.33. *Id.* at 25–26.[3]

At the time they filed their petition, the Pansiers owed the Internal Revenue Service over $250,000 in past-due income tax liabilities (attributable to Gary Pansier's tax liability for 1995 through 1998, and Gary and Joan Pansier's tax liability for 1999 through 2006 and 2014), for which the IRS has filed notices of federal tax liens. *See* Claim No. 2-1.

The deadline for objecting to the debtors' discharges in this case was July 9, 2018. In the absence of a timely objection or request for an extension of the objection deadline, the Court could have granted the debtors' discharges

---

[2] The actual total listed on Schedule I is $7,391.15, which appears to be a math error.

[3] The actual net income reported on Schedule J is $2,308.33, but that number is based on the miscalculated income figure of $7,391.15.

on July 10, 2018 (at which point the automatic stay would have terminated as a matter of law under 11 U.S.C. § 362(c)(2)(C)). The United States Trustee timely requested an extension of the objection deadline, and ultimately filed an adversary proceeding to deny the debtors' discharges under 11 U.S.C. §§ 727(a)(2), (3), (4)(A), and (5). *See* Adv. No. 18-2222 (filed October 12, 2018). Discovery in the U.S. Trustee's adversary is underway and is scheduled to close at the end of April 2019, while dispositive motion briefing is set to conclude in July 2019.

## ARGUMENTS

The United States claims that relief from the stay is warranted under 11 U.S.C. § 362(d)(1) because its tax lien interest in the debtors' income is not adequately protected. According to the IRS, the debtors are eroding its collateral by using their discretionary income—income that could decrease or cease upon either of their deaths at any time—to pay their personal expenses rather than make payments toward their significant liabilities to the IRS. The IRS calculates the Pansiers' discretionary income at $3,584.30,[4] which includes the $1,275 the Pansiers claim to pay as a rental expense—an expense the IRS asserts the Pansiers should not be allowed to claim because the facts are not consistent with them being renters of their residence.

In response, the Pansiers assert that the United States has not met its burden to show cause for relief and point to alleged fabrications and false statements in the United States' motion as a basis to deny the requested relief. *See* CM-ECF Doc. No. 72, at 8, 11–12.[5] The Pansiers also dispute that Mr.

---

[4] The IRS originally calculated discretionary income using a monthly income figure of $8,553.95, which included two one-time withdrawals from Fidelity Investments ($500) and MetLife IRA ($661.83), resulting in discretionary income of $4,746.13. *See* CM-ECF Doc. No. 66, at 4–5. The IRS later conceded that if the one-time transfers are excluded, the Pansiers' monthly income, per Schedule I, is $7,392.12. *See* CM-ECF Doc. No. 81, at 3–4.

[5] To the extent the United States may have misstated or misinterpreted any facts in its motion, the United States later conceded or clarified its position, *see supra* n.4, and CM-ECF Doc. No. 81, at n.2.

Pansier's pension income will cease upon his death and contest the IRS's claim that they are not entitled to claim a rental expense.

Notably, both parties point to the opposing side's historical conduct in support of their respective positions, reciting and characterizing details of prior litigation concerning the Pansiers' tax liability, as well as proceedings related to the Pansiers' current and prior bankruptcy cases. *See, e.g.,* CM-ECF Doc. No. 66, at 2–3; CM-ECF Doc. No. 72 at 2–7, ¶¶ 3–16. Much of this discussion is not germane to whether the United States is adequately protected in this case at this time, and the Court will not revisit any decisions made by prior courts, nor will it recharacterize, bless or endorse any of the parties' descriptions about historical conduct.

For the reasons stated on the record at the February 20 hearing, and as more fully explained below, the Court concludes that the United States is entitled to relief under 11 U.S.C. § 362(d)(1) and the automatic stay should be modified to allow the IRS to pursue its collection rights against up to $2,309.33 of Gary Pansier's pension income.

## DISCUSSION

### A.  Jurisdiction and Standing

As an initial procedural point, the Pansiers claim that the United States has failed to establish both (1) the Court's jurisdiction and (2) the United States' standing to bring the motion. *See* CM-ECF Doc. No. 72, at 10.

This challenge apparently is premised, at least in part, on a belief that the United States must prove its authority to represent the Internal Revenue Service. *See* CM-ECF Doc. No. 72, at 10 ("The United States' Motion to Lift the Automatic Stay is defective due to the fact that it does not provide a jurisdictional statement, and the United States failed to file a notice of appearance in this case. Visibly absent from their motion is a statement that the United States has . . . statutory authority to represent the Internal Revenue Service."); CM-ECF Doc. No. 84 (audio of February 20, 2019 hearing, at 22:50–24:33) (Mr. Pansier, asserting that counsel for the United States "hasn't proved

jurisdiction to . . . be in the court to represent the IRS, a foreign corporation"). This is an argument that the debtors previously made—and the Court previously rejected—in a related adversary proceeding. *See* Adv. No. 18-2129, CM-ECF Doc. No. 10 (audio of August 16, 2018 hearing, at 36:42–39:22); *see also Gengler v. I.R.S.*, No. 10-CV-689, 2010 WL 5463314, at *1 (E.D. Wis. Dec. 29, 2010) ("Where taxpayers are authorized to sue on matters arising out of IRS actions, the United States is the proper party."); *In re Levoy*, 182 B.R. 827, 832 (B.A.P. 9th Cir. 1995) ("It is a well-settled principle that the IRS cannot be sued and that the proper party in actions involving federal taxes is the United States of America.") (citing *Blackmar v. Guerre,* 342 U.S. 512, 514 (1952)).

The Pansiers also link their jurisdictional challenge to their claimed exemption of Mr. Pansier's pension income. At the February 20 hearing, Mrs. Pansier informed the Court: "It is our position that the pension property is exempt and is not part of the estate, therefore the Court lacks jurisdiction to lift the stay at this time in order to allow exempt property to be levied." *See* CM-ECF Doc. No. 84 (audio at 8:52–9:41; 10:30–11:55) (citing to *In re Muller*, 72 B.R. 280, 287 (C.D. Ill. 1987)). This argument misunderstands the nature of this contested matter. "Hearings on motions for relief from stay are intended to be summary proceedings in which the bankruptcy court decides only a limited set of issues," including "whether the creditor is adequately protected." *Rinaldi v. HSBC Bank USA, N.A. (In re Rinaldi)*, 487 B.R. 516, 530 (Bankr. E.D. Wis. 2013). In ruling on the United States' motion, the Court is not deciding whether or to what extent the United States may enforce its liens against Mr. Pansier's pension—only whether the United States has a colorable claim to the property, which is sufficiently plausible to allow the IRS to pursue its rights elsewhere. *See, e.g., In re Bailey*, 574 B.R. 15, 17 (Bankr. D. Me. 2017) ("There is no dispute that the IRS, as a creditor of Mr. Bailey with a 'colorable' tax claim against Mr. Bailey's property [exempt pensions and social security benefits], has standing to seek relief from stay.")*; Matter of Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) ("Questions of the validity of liens are

not generally at issue in a § 362 hearing, but only whether there is a *colorable* claim of a lien on property of the estate."); *Rinaldi*, 487 B.R. at 530 ("[A] bankruptcy court's decision to modify the stay 'is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere.'") (quoting *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 34 (1st Cir.1994)). [6]

Here, the United States has established a colorable claim to the debtors' property. The IRS filed a secured claim, Claim No. 2, in the amount of $256,540.28 (with a secured component of $256,500.18), which constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). The proof of claim is supported by notices of federal tax liens, which attach to all property and rights to property belonging to the taxpayer (including Mr. Pansier's pension), 26 U.S.C. § 6321, and may be enforced through means such as levy, 26 U.S.C. § 6331(a). The Court therefore rejects the debtors' argument that the United States lacks standing to seek relief from the stay.

The Court similarly rejects the Pansiers' challenge to its jurisdiction. As set forth above, this is a core proceeding under 28 U.S.C. § 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay), over which the Court has jurisdiction, and may enter a final order.

**B.    Stay Relief**

Section 362(d) of the Bankruptcy Code provides that the court *shall* grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The party requesting relief from stay has the burden of proof on the issue of the

---

[6] To the extent that the Pansiers suggested at the February 20 hearing that their bankruptcy exemptions serve to shield property from the enforcement of the United States' perfected tax liens, that argument also is misguided. *See* 11 U.S.C. § 522(c)(1)(B) ("Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except . . . a debt secured by a lien that is . . . a tax lien, notice of which is properly filed.").

debtor's equity in property, while the debtor bears the burden of proof on all other issues. 11 U.S.C. § 362(g). "Courts have interpreted section 362(g)(2) to mean the movant must first establish a prima facie case, which then must be rebutted by the debtor if relief from stay is to be avoided." *In re Spencer,* 531 B.R. 208, 212 (Bankr. W.D. Wis. 2015)).

The United States argues that its interest in the Pansiers' property is not adequately protected because the Pansiers are consuming and eroding their discretionary income (including Gary Pansier's pension) while the United States' tax lien interest in that income remains unpaid and continues to mount. The Court agrees. Like the debtor in *Bailey*, the Pansiers receive monthly payments from Mr. Pansier's pension and use that money to pay their personal expenses, without making any payment toward their significant tax liabilities. *See Bailey*, 574 B.R. at 18 (absent a plan by the Chapter 13 debtor for adequate protection of the IRS, the IRS was entitled to relief from the automatic stay to exercise its lien rights, based on evidence that the current state of affairs—in which the debtor was receiving pension and Social Security benefits and using them to pay his expenses and to fund his Chapter 13 plan—was eroding the IRS's collateral).

Nor have the Pansiers offered to provide adequate protection to the United States. The Pansiers' schedules report over $2,300 in monthly discretionary income left over after they pay their expenses, none of which they have offered to use to make payments to the IRS. Instead, the Pansiers appear to believe that the IRS's lien alone is sufficient adequate protection. *See* CM-ECF Doc. No. 72 at 13–14. But, as the United States points out in its reply, "the liens alone fall short of adequate protection for the United States. If that were the case, the United States would be considered adequately protected in any bankruptcy case where tax liens exist on a debtor's property." CM-ECF Doc. No. 81, at 2–3. Indeed, if a lien alone provided adequate protection as a matter of law, Code section 361 (which describes cash payments and replacement liens as forms of adequate protection for secured creditors) would be unnecessary.

The Pansiers urge the Court to engage in an equitable "balance of hardships" test to determine whether cause exists under § 362(d)(1). *See* CM-ECF Doc. No. 72, at 13. Factors relevant to such an inquiry include "interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." *In re Milne*, 185 B.R. 280, 283 (N.D. Ill. 1995).[7]

After considering the relevant circumstances, the Court concludes that there is cause to grant the United States relief from the stay. Lifting the stay will not interfere with the bankruptcy case. As the Pansiers have argued, the property at issue is not property of the estate and will not be liquidated for the benefit of unsecured creditors, nor is it necessary to fund a Chapter 13 plan.

Turning to the relative harms, there is no dispute that the Pansiers have discretionary income. Although the parties disagree over the *amount* of that income—with the United States asserting that the Pansiers' rent expense should be excluded so that the amount is $3,584.30—both parties concede that *at least* $2,309.33 of the Pansiers' income exceeds their expenses. *See* CM-ECF Doc. No. 8, at 25–26. To the extent the debtors are not using this excess income to make payments on the IRS's claim, they receive a benefit at the expense of the IRS, whose unpaid claim continues to grow the longer the automatic stay remains in place.

---

[7] The Pansiers cite to *In re Spansion, Inc.*, 418 B.R. 84, 97 (Bankr. D. Del. 2009), and identify the following three-factor test as the relevant inquiry for the Court: (1) whether any great prejudice to either the bankruptcy estate or the debtors will result if the IRS is allowed to continue a levy to seize 60% of their retirement income; (2) whether maintaining the stay will result in hardship to the government that "considerably outweighs" the hardship to the debtors if the stay were modified, and (3) whether the IRS is likely to succeed on the merits if the stay is lifted. CM-ECF Doc. No. 72, at 13. This test is not entirely suitable for the situation at hand. Courts usually look to these factors when considering whether there is cause to lift the stay of section 362(a)(1) to allow an unsecured creditor to continue with pending litigation against the debtor in another forum. *See, e.g., Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (considering similar factors in determining whether to grant relief from stay to allow an unsecured creditor to proceed with a civil action against the debtor). Here, the United States' purpose in seeking stay relief is to enforce a lien against property of the debtors, which is otherwise prohibited by section 362(a)(5).

Moreover, had this case followed the usual course—"usual" in the sense that the U.S. Trustee had not objected to discharge—the debtors' discharges would have issued sometime in July 2018, after which the IRS would have been free to continue enforcing its lien rights against the debtors' property. *See, e.g., In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990) ("The liability for the amount assessed remains legally enforceable even where the underlying tax debt is discharged in the bankruptcy proceeding. A discharge in bankruptcy prevents the I.R.S. from taking any action to collect the debt as a personal liability of the debtor.").

Finally, although the Pansiers urge the Court to ignore their (advanced) ages and insist that "a court cannot issue an opinion based on a prospect that some day one of [them] might pass away," CM-ECF Doc. No. 84 (audio of February 20, 2019 hearing, at 37:10–37:21), they acknowledge in their response brief that, "[w]hen taking into consideration the accrual of penalties and interest on the amount the IRS claims they owe, it is highly unlikely that the tax liabilities would be paid off in either of the Debtor's lifetimes, even if the stay is lifted." CM-ECF Doc. No. 72, at 8. Even if Mr. Pansier's pension income will continue in full should he pass away, as the debtors have asserted, the (un)likelihood of the IRS realizing the full value of its lien during the probable remaining lifespans of both debtors is a risk factor the Court may consider in determining whether the United States' lien interest is adequately protected.

Weighing all the relevant circumstances, the Court finds that the United States' interest is not adequately protected, and therefore cause exists to lift the stay. The only remaining question is the appropriate form/amount of adequate protection.

Although the United States requests in its briefing that it be allowed to proceed against $3,584.30 of Mr. Pansier's pension income, counsel for the United States conceded at the February 20 hearing that an evidentiary hearing would be required to determine whether the Pansiers are true renters of their residence and thus entitled to claim their $1,275 rent expense. Counsel therefore asked the Court to lift the stay to allow the IRS to collect the amount

of undisputed discretionary income of $2,309.33, while reserving a final ruling on the Pansiers' status as renters until after additional information comes to light in one or both of the pending, related adversary proceedings. Because the record is not clear enough concerning the Pansiers' entitlement to claim a "rent" expense on Schedule J, the Court will not consider that expense part of the Pansiers' discretionary income, *for purposes of this motion only*. This in no way prevents the IRS from later moving for additional adequate protection and presenting evidence that would entitle it to receive the additional $1,275, should such evidence come to light.

Based on the record before it, the Court is satisfied that allowing the IRS to proceed against $2,309.33 of Mr. Pansier's pension income will provide the IRS protection for its lien rights, while also allowing the debtors to retain sufficient funds to pay their reported expenses.

Unfortunately, a final note must be added. This is not the first time the Court must admonish the debtors about disrespect toward the Court. *See, e.g.*, Adv. No. 18-2129-beh (filed June 11, 2018), CM-ECF Doc. No. 19. During the hearing on this motion, Mrs. Pansier presented the bulk of the debtors' argument against the motion. But Mr. Pansier added his own comments about jurisdiction, which came in the form of a hostile remark aimed at the judge personally: "Your Honor, are you making a decision that they represent, they have jurisdiction? You're going to put that on your lap? That's fine. But they have to prove it. And you know it and I know it and they know it. . . . So if you want to take it [and] put it on your lap, go for it." CM-ECF Doc. No. 84 (audio of February 20, 2019 hearing, at 22:50–24:33).

Such commentary is neither legal argument, nor respectful toward the Court as an institution. The Court recognizes that both debtors may make legal arguments, as their case essentially is a joint administration of two Chapter 7 cases. *See* 11 U.S.C. § 302. But what either debtor has to say must be relevant and courteous. Mr. Pansier's commentary fell outside the pale. Because this is the second time the Court has had to admonish the debtors about their behavior during telephone hearings, the Court will require the

debtors' appearance in person at all future hearings on contested matters, but not for mere scheduling conferences.

## CONCLUSION

For the foregoing reasons, and consistent with the Court's February 20, 2019 oral ruling, the United States has met its burden in proving that it is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1), and the stay of 11 U.S.C. § 362 shall be modified to permit the United States to exercise its rights and remedies with respect to $2,309.33 of Mr. Pansier's pension income under applicable nonbankruptcy law.

The Court has entered a separate order consistent with this decision.

Dated: February 25, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge