UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gary L. Pansier and                                 Case No. 18-22297-beh
    Joan R. Pansier,

              Debtors.                                       Chapter 7

**MEMORANDUM DECISION AND ORDER ON DEBTORS' MOTION FOR RECONSIDERATION AND REQUEST FOR AN EVIDENTIARY HEARING**

      The debtors Gary and Joan Pansier have asked the Court to reconsider its decision and order modifying the automatic stay in favor of the United States Internal Revenue Service, and to allow them to present additional evidence on the matter. The United States opposes the request. For the reasons set forth below, the Court will reconsider its prior decision. On reconsideration, the Court finds that it did not commit clear error in reaching its decision or that newly discovered evidence exists or warrants a change in the outcome. Nevertheless, in an exercise of its discretion, the Court will modify its prior order as it relates to the Pansiers' tax liabilities for tax years 1995 through 1998.

**BACKGROUND**

      The facts underlying this motion are set out in the Court's February 25, 2019 memorandum decision, which explains in further detail the reasons for the Court's February 20 oral ruling modifying the automatic stay. *In re Pansier*, No. 18-22297-BEH, 2019 WL 949898, at *1 (Bankr. E.D. Wis. Feb. 25, 2019) (CM-ECF Doc. No. 87). Only facts from that decision relevant to the instant motion will be repeated herein.

      On December 3, 2018, the United States filed a motion for relief from the automatic stay, alleging a lack of adequate protection and cause for relief under 11 U.S.C. § 362(d)(1). The Pansiers objected to the motion, asserting that the United States had failed to meet its burden of proof and had fabricated

allegations to the Court.  Notably, the Pansiers argued that the statute of limitations for collecting their 1995 through 1998 tax liabilities expired in 2014.  *See* CM-ECF Doc. No. 72, at 3 ("Based on an alleged assessment date of February 26, 2001, after taking into consideration periods that the statute of limitations for collection was tolled for the Debtor's 2008 Bankruptcy, Collection Due Process Hearing, and the Tax Court Case No. 3143-BL, the statute of limitations for collection of taxes for 1995 through 1998, pursuant to 26 U.S.C. §6502(a)(1) expired on December 23, 2014.").  Now they say the statute expired on February 2, 2015.  *See* CM-ECF Doc. No. 92, at 5.

In its reply brief on the original motion, the United States represented that the statute of limitations for collecting Joan Pansier's—but not Gary Pansier's—1995 through 1998 federal income tax liabilities had expired, and therefore the IRS's proof of claim contained only Gary Pansier's federal income tax liabilities for those four years.  CM-ECF Doc. No. 81, at 3 n.4.

The Court held a hearing on the United States' motion on February 20, 2019.  At that hearing, Mrs. Pansier questioned how the statute of limitations could have expired as to her tax liability, but not her husband's, noting that the Pansiers filed joint tax returns for tax years 1995 through 1998.  Counsel for the United States was unable to identify the specific reason for that difference on the record, suggesting that it may have been related to Mr. Pansier's incarceration or his collection due process hearing, but offered to provide Mrs. Pansier with the relevant authority after the hearing.[1]

After considering the parties' arguments and the evidence of record, the Court issued an oral ruling at the February 20 hearing granting the United States' motion and modifying the automatic stay.  The Court entered a written order to that effect on February 22 and issued a memorandum decision setting forth its reasoning in more detail on February 25.

---

[1] On March 21, 2019, the Pansiers filed a motion to compel the United States to provide them with the information regarding the expiration of the statute of limitations on collection for tax years 1995 through 1998.  CM-ECF Doc. No. 90.

On March 8, the Pansiers requested reconsideration of the order modifying the stay in favor of the United States, citing Federal Rules of Civil Procedure 59 and 60, and Federal Rules of Bankruptcy Procedure 9023 and 9024.

In seeking reconsideration, the Pansiers' allegations are two-fold. First, they assert that the Court erred when it "failed to rule or address the issue that if the IRS filed a Proof of Claim for years that the statute of limitations for collection had expired, this constitutes a fraudulent claim by the government." CM-ECF Doc. No. 89, at 6; *see also id.* at 11 ("[T]he Debtors respectfully [request that the Court] grant this Motion for Reconsideration due to the fact that the basis for modifying the stay to allow the IRS to pursue collection activities is predicated on a Proof of Claim of a secured debt that is uncollectible under the Internal Revenue Code."). Second, the Pansiers suggest that "newly discovered evidence"—apparently notices of tax liens filed in October or November 2018—warrants reconsideration. The Pansiers also assert that the Court erred by not allowing them to present evidence "regarding the unresolved issues of the Debtor[]s['] rental expense or the fact that the statute of limitations for collection had expired on the years 1995 through 1998," *id.* at 6, and request that the Court "grant them an evidentiary hearing before any unauthorized collection activity by the IRS is allowed to resume," *id.* at 11.

In its opposition brief, the United States argues that the motion should be denied because the Pansiers have failed to show an intervening change in the law, that the Court's prior decision was based on a manifest error of law or fact, or that there is newly discovered evidence the Court should consider. CM-ECF Doc. No. 91. The United States contends that a motion for relief from stay is not the proper proceeding to challenge the collectability of the IRS's debt. Even if it were, says the United States, the Pansiers are incorrect that the statute of limitations to collect Mr. Pansier's 1995 through 1998 tax liabilities has expired. The United States asserts that several events tolled the statute of limitations on collection, including the Pansiers' 2008 bankruptcy filing and

the administrative and court proceedings involving Mr. Pansier's collection due process ("CDP") hearing request. According to the United States' calculations, the limitations period was tolled for at least 3,517 days, extending its duration until at least October 13, 2020.[2] The United States further argues that the Pansiers' motion for reconsideration is merely a rehashing of their prior, failed arguments, and that an evidentiary hearing is unnecessary.

In reply, the Pansiers assert that the IRS's calculations are incorrect; after conducting their own analysis, *see* CM-ECF Doc. No. 92, at 5, 20–21, the Pansiers contend that the statute of limitations actually expired on February 2, 2015 (rather than December 23, 2014, as they previously asserted in their opposition to the motion for stay relief).

## DISCUSSION

**1.**     **Standard for Reconsideration**

A motion to reconsider filed within 14 days of the entry of a final order is treated as a motion to alter or amend the order under Federal Rule of Civil Procedure 59(e) (incorporated by Federal Rule of Bankruptcy Procedure 9023). *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166-67 (7th Cir. 1995). A motion for reconsideration serves a limited function: Rule 59(e) "allows a party to direct the [] court's attention to newly discovered material evidence or a

---

[2] Specifically, the United States identified the following periods in which it claims the limitations period was tolled:

- November 12, 2008 through November 8, 2009 (362 days), which represents the time between the filing of the Pansiers' 2008 bankruptcy petition on November 12, 2008, until 180 days after their May 12, 2009 discharge;
- July 15, 2009 through June 16, 2012 (1,068 days), which represents the time between the reopening of the Pansiers' 2008 bankruptcy case on July 15, 2009, until 180 days after the December 19, 2011 Seventh Circuit decision on the Pansiers' appeal related to the dischargeability of their tax obligations; and
- April 8, 2010 through December 24, 2015 (2,087 days), which represents the time between Mr. Pansier's CDP hearing request on April 8, 2010, until 90 days after the September 25, 2015 Seventh Circuit decision on the Pansiers' related appeal.

Notably, however, there is significant overlap between the periods listed above (July 15, 2009 through November 8, 2009, and April 8, 2010 through June 16, 2012), which resulted in the United States double-counting those dates in calculating its 3,517 figure. The Court also finds other errors with the United States' calculation, which will be explained later in this decision.

manifest error of law or fact." *Divane v. Krull Elec. Co.*, 194 F.3d 845, 850 (7th Cir. 1999) (internal quotations omitted). Its purpose is to enable a court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate procedures. *Id.* "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Yorke v. Citibank, N.A.* (*In re BNT Terminals, Inc.*), 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990).

When a movant requests relief based on newly discovered evidence, the movant "must show that: (1) it has evidence that was discovered post-trial [or post-judgment]; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that [it] would probably produce a new result." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013) (quoting *Envtl. Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008)); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996) ("the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion") (internal brackets and quotation marks omitted). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the [] court prior to the judgment." *Cincinnati Life*, 722 F.3d at 954 (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal citation and quotation marks omitted)).

The Pansiers assert that they filed their motion "to correct errors of fact and law and to present newly discovered evidence regarding the United States' Motion to Lift the Stay and the United States' alleged *colorable* claim of a lien on property of the estate." CM-ECF Doc. No. 89, at 1. Although the Pansiers

recite several alleged "failures" of the Court in their motion,[3] their request for reconsideration makes two primary arguments:

(1) The Court erred (as a matter of law or fact) when it "failed to rule or address the issue that if the IRS filed a Proof of Claim for years that the statute of limitations for collection had expired, this constitutes a fraudulent claim by the government"; and

(2) Reconsideration is warranted because of "newly discovered evidence," in the form of a Notice of Federal Tax Lien that the IRS filed on October 31, 2018, against the Sheffield Crest Trust as nominee of Joan R. Pansier.

*See id.* at 6, 9.

As explained further below, the Pansiers' motion does not demonstrate that the Court overlooked any dispositive factual matters or controlling decisions of law in making its decision, or that any newly discovered evidence exists that would probably change the outcome.

Notwithstanding the Pansiers' failure to carry their burden, in the interests of justice—and because the United States' response brief served to add confusion, rather than clarity, to the matter—the Court on its own re-examined the relevant law and facts. On reconsideration, the Court finds that its prior determination that the United States had established "cause" to modify the stay was correct and affirms that portion of its prior ruling. But for equitable reasons, the Court will amend its prior order to allow the IRS to enforce its levy rights with respect to only the Pansiers' 1999 through 2006 and 2014 tax liabilities.

## 2.   **The Pansiers' statute-of-limitations argument**

The Court reads the Pansiers' first argument as asserting that the Court "committed a manifest error of law or fact" when it declined to consider or adjudicate the merits of the Pansiers' challenge to a portion of the IRS's claim—

---

[3] *See id.* at 4 ("In the ruling, the Court did not address the fact that if the statute of limitations for collection on 1995 through 1998 had expired for Mrs. Pansier, then it also expired for Mr. Pansier; that the pension income would continue in the event of Mr. Pansier's passing; that the exempt property in the form of a pension is removed from the estate to allow debtors to retain property for purposes of support and a fresh start.").

specifically, their assertion that the statute of limitations to collect their 1995 through 1998 tax liabilities had expired in 2014. *See* CM-ECF Doc. No. 89, at 7–9 (asserting that the Court has "jurisdiction to reconsider its decision to lift the stay because the *prima facie* evidence of a debt is based on a fraudulent proof of claim," and that, if the IRS's proof of claim "is based on a claim of a debt that is not collectible and the Debtor[]s['] allegations that it is not enforceable remains unrebutted, then the Court has an obligation to weigh the prima facie evidence with all of the other probative evidence presented").

Contrary to the Pansiers' assertion, the Court *did* consider their statute-of-limitations argument, which they first raised in their objection to the motion for relief from stay (*see* CM-ECF Doc. No. 72, at 3), and later at the February 20 hearing. In spite of that challenge, the Court found that the IRS had established a sufficiently colorable security interest (tax liens for tax years 1995 through 2006 and 2014) to seek relief from the stay to enforce that interest. To the extent the Pansiers dislike *how* the Court considered their argument, any disagreement is with the Court's exercise of its discretion—not a legal or factual error.

As the Court stated in its memorandum decision, a hearing on a motion for relief from stay is intended to decide a limited set of issues, one of which is whether a creditor has a *colorable* claim of a security interest in the debtors' property. *See* CM-ECF Doc. No. 87, at 5–6, *quoting Matter of Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) ("Questions of the validity of liens are not generally at issue in a § 362 hearing, but only whether there is a colorable claim of a lien on property of the estate."). This is a low threshold: "A colorable claim (one seemingly valid and genuine) is not a difficult standard to meet." *In re Midway Airlines, Inc.*, 167 B.R. 880, 884 (Bankr. N.D. Ill. 1994). For that reason, a hearing on a motion for relief from stay

> is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a

grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere . . . .

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33–34 (1st Cir. 1994); *see also Montgomery v. Dennis Joslin Co. II, LLC (In re Montgomery)*, 262 B.R. 772, 775 (8th Cir. BAP 2001) (noting that a court has discretion under § 362(d) to consider evidence concerning challenges to a movant's interest as a secured party, but that the court's consideration of such evidence should stop "as soon as it appears that the movant has a 'colorable claim' to the property in question").

For the reasons stated in the Court's February 25 decision, the Court concluded that the IRS established a colorable claim to the debtors' property. The Court was not required to adjudicate the merits of the Pansiers' statute-of-limitations objection before doing so—particularly when the only "support" for their argument was a challenge to the IRS to prove the validity of its claim, which is already presumed to be valid and enforceable under Federal Rule of Bankruptcy Procedure 3001(f). More importantly, the Pansiers did not—and still do not—challenge the portion of the IRS's claim attributable to tax years 1999 through 2006 and 2014, which amounts to over $136,000, and is secured by recorded federal tax liens. The IRS's undisputed security interest based on those tax liabilities attaches to Mr. Pansier's pension plan and provides the IRS with standing to seek relief from the automatic stay.

On this record, the Court was within its discretion in modifying the automatic stay to permit enforcement of the IRS's statutory liens, reserving the Pansiers' challenge to the enforceability of the portion of the IRS's claim attributable to 1995 through 1998 taxes for another day and another forum. *See* CM-ECF Doc. No. 87, at 5 ("In ruling on the United States' motion, the Court is not deciding whether or to what extent the United States may enforce its liens against Mr. Pansier's pension—only whether the United States has a colorable claim to the property, which is sufficiently plausible to allow the IRS to pursue its rights elsewhere."). The Court's decision left Mr. Pansier free to

assert any defenses or challenges under nonbankruptcy law to the IRS's attempt to levy his pension to collect his 1995 through 1998 tax liabilities.

In sum, the Pansiers' motion does not establish that the Court committed an error of law or fact warranting reconsideration by failing to rule on their statute-of-limitations challenge. The Court nonetheless has decided to review the matter anew, prompted in part by a desire to resolve the Pansiers' motion to compel, as well as questions raised by statements in the United States' response brief. After reviewing the relevant dates and legal authority cited by the United States in calculating the expiration of the limitations period (as no sooner than October 2020), the Court undertook its own calculations, which, as demonstrated below, do not produce the same results.

Mr. Pansier's liabilities for tax years 1995 through 1998 were assessed against Mr. Pansier *solely* on February 26, 2001, under the status of "Married Filing Separate." *See* CM-ECF Doc. No. 67-1, at 1, 5, 8, and 11 (IRS Account Transcripts). Ordinarily, the United States would have had ten years—or until February 26, 2011—to collect those assessments. *See* 26 U.S.C. § 6502(a). This equates to 3,652 days in which the IRS should be able to collect its debt. The ten-year limitations period can be suspended for several reasons, two of which are applicable here: (1) a bankruptcy filing, and (2) a request for a collection due process hearing.

On November 12, 2008, the Pansiers filed a Chapter 7 bankruptcy petition. Case No. 08-32400-svk. As of November 12, 2008, the IRS had been able to collect its debt for 2,815 days—leaving 837 days remaining in the collections limitations period. The filing of the bankruptcy petition suspended the running of that limitations period "for the period during which the [IRS] is prohibited by reason of [the bankruptcy] case from . . . collecting and . . . 6 months thereafter." 26 U.S.C. § 6503(h)(2). The Pansiers received their bankruptcy discharge (meaning the automatic stay no longer prohibited collection) on May 12, 2009. Under § 6503(h)(2), the limitations period remained suspended for another six months, or until November 12, 2009. This means the limitations period began running again on November 13, 2009.

The Court does not agree with the United States, at least on the record before it, that the July 15, 2009 reopening of the bankruptcy case (and the Pansiers' subsequent adversary proceeding seeking a determination that their 1995 through 1998 tax liabilities had been discharged) suspended the collections period further, until six months after the Seventh Circuit issued its December 19, 2011 decision in *In re Pansier*, 451 F. App'x 593 (7th Cir. 2011). Although the United States argues in its response that the limitations period was tolled during this time under 26 U.S.C. § 6503(h), there is no evidence that the IRS was "prohibited by reason of [the bankruptcy] case from . . . collecting" during that period. Instead, the IRS transcripts for those tax years reflect that the IRS *did* attempt to collect, and issued notices of intent to levy on March 8, 2010. *See* CM-ECF Doc. No. 67-1, at 3, 7, 10, and 13 (IRS Account Transcripts). These notices are what ultimately resulted in Mr. Pansier's collection due process hearing request—and the start of another tolling period, on April 8, 2010. (Between November 13, 2009 and April 8, 2010, the IRS was able to collect its debt for another 147 days, leaving 690 days remaining in the collections limitations period.)

On April 8, 2010, the IRS received Mr. Pansier's request for a CDP hearing for the tax liabilities at issue. This request suspended the collection statute of limitations, under 26 U.S.C. § 6330(e) ("[I]f a [CDP] hearing is requested . . . the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 . . . shall be suspended for the period during which such hearing, and appeals therein, are pending. In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing."). The Seventh Circuit issued its mandate and notice of closing in the Pansiers' appeal related to the CDP hearing (*Pansier v. Comm'r*, 623 Fed. Appx 809 (7th Cir. 2015)) on November 17, 2015. The United States reads 26 U.S.C. § 6330(e) as suspending the limitations period for an additional 90 days after this date

(which would be February 15, 2016).⁴ The Court does not read the statute the same way. Instead, the provision simply ensures that the statute of limitations will not expire for at least 90 days after a final determination on the CDP request; it does not automatically add extra time to the suspense period, *cf.* 26 U.S.C. § 6503(h). This means, under the Court's review of the law and the facts in the record before it, that the collections period would have run for another 690 days after November 17, 2015—or until October 7, 2017—unless the period was suspended again for reasons unknown to the Court.

The Court will not speculate about other events that may have occurred to toll the limitations period further, nor is the Court making any determination about whether the statute of limitations had not yet expired when the IRS filed its federal lawsuit to collect the tax debt on December 13, 2017. The Court has engaged in the above analysis only to demonstrate why it disagrees with the United States' assertion, based on the facts presented in its response, that the statute of limitations has been extended until at least October 2020.⁵ The IRS's math error appears to be rooted in a misreading of the applicable regulations, and not an intentional misstatement or deceit, as the Pansiers have repeatedly claimed. *See* CM-ECF Doc. No. 89, at 6–8, 10; Doc. No. 92, at 5. While this lack of attention to detail is disappointing, it does not suggest fraud.

The Court's disagreement with the IRS's calculations does not alter its prior conclusion that the IRS has established a colorable claim of a security interest in Mr. Pansier's pension, or the correctness of the Court's refusal to adjudicate the merits of the Pansiers' statute-of-limitations challenge. But it does trouble the Court that the United States has offered incorrect or inconsistent information in its opposition brief, which weakens the strength of

---

⁴ Notably, the United States in its opposition brief relied on the September 25, 2015 issuance of the Seventh Circuit opinion, rather than the November 17 mandate and case closing, but the IRS's account transcripts show that it "[r]emoved [a] bankruptcy or other legal action" from the accounts on February 15, 2016. *See* CM-ECF Doc. No. 67-1, at 3, 7, 10, and 13.

⁵ For the same reasons, the Court disagrees with the Pansiers that the collections limitations period expired in February 2015.

its prior arguments regarding the statute of limitations on collections. As a result, the Court will modify its prior order granting stay relief, to clarify that the United States may seek to levy Mr. Pansier's pension to satisfy liabilities for tax years 1999 through 2006 and 2014, only. This decision in no way precludes either party from raising the same or new arguments concerning the collectability of the 1995 through 1998 tax liabilities in another forum, nor does it serve as a determination on the merits entitled to preclusive effect on the parties' claims.

**3.     The Pansiers' claim of newly-discovered evidence**

As a second argument for reconsideration, the Pansiers challenge the IRS's claim that "when the debtors pass away, so does the debtors' income in which the United States has a lien interest." According to the Pansiers, "the government is not being honest or forthright with the Court because they failed to disclose the fact that while the automatic stay was in effect, the IRS filed a Notice of Federal Tax Lien on October 31, 2018 on Sheffield Crest Trust as Nominee of Joan R. Pansier." CM-ECF Doc. No. 89, at 9.

The Pansiers make no showing that they could not have discovered this "new" evidence—which was publicly available before the United States filed its motion for relief from stay—before the Court's hearing on the matter. Nor have they explained how the evidence is not cumulative. The United States' proof of claim is supported by a notice of federal tax lien filed against the Sheffield Crest Trust as Nominee of Joan R. Pansier, recorded on November 1, 2017. Claim No. 2-2, at 9. The Court was aware of this lien at the time it made its decision on the motion for relief from stay, which makes the materiality of this "new" evidence doubtful. But most wanting from the Pansiers' argument is an explanation of how this new evidence would have changed the outcome—specifically, how the lien provides additional or adequate protection to the United States. The Pansiers have maintained throughout the course of their bankruptcy proceeding that they do not own the real property held by the Sheffield Crest Trust. If their claim is true, then providing evidence of a lien on

this property does not show how the United States' interests are protected. In short, this "newly-discovered" evidence does not warrant reconsideration.

**4.      Amendment of the Court's prior order**

As noted above, after reconsideration prompted by the Court's own concerns, the Court has decided to exercise its discretion and amend its prior order modifying the automatic stay. This amendment relates only to the tax years for which the IRS may attempt to enforce its secured interest. It does not alter the *amount* of income that the United States may seek to levy.

In challenging the Court's prior ruling, the Pansiers raise their statute-of-limitations argument to dispute the IRS's standing as a secured creditor. They do not claim that the Court erred in finding that their discretionary income is just over $2,309 per month (nor could they, because the finding was based on their own schedules, sworn under penalty of perjury).[6] They similarly do not challenge the Court's conclusion that their discretionary income should be used to provide adequate protection to the United States while the Pansiers' bankruptcy remains pending. The Court considered the likelihood that the United States would be able to realize the full value of its secured claim during the remaining lifespans of both debtors in determining the appropriate amount of adequate protection. The Court also was mindful that, absent the Pansiers' bankruptcy case, the United States could attempt to levy 100% of Mr. Pansier's pension income ($4,047.27/month), as it has done in the past. In other words, for every month this case remains pending, the United States is prohibited from attempting to levy approximately $1,738 of Mr. Pansier's pension income.

Even assuming for the sake of argument that the United States cannot enforce its claim for Mr. Pansier's 1995 through 1998 tax liabilities, it still holds a secured claim for over $136,000. Ignoring the accumulation of interest, it would take the IRS almost 59 months to collect its claim at a rate of

---

[6] In a footnote, the Pansiers claim that they use this discretionary income for the care and feeding of their pets, costs related to their bankruptcy filing (such as copying, legal research, transcripts, and a PACER account), office supplies, vitamins, supplements, and alternative medicine treatments (such as reflexology, ion cleanse, Live Blood Microscopic and therapeutic massage) used to keep them healthy, which were not reflected in their bankruptcy schedules.

$2,309.33 per month. That same amount could be collected in just under 34 months at a rate of $4,047.27. In either event, the existence of the IRS's collateral for the entire duration of the collection period is not certain.

On a related note, because the Court did not include the Pansiers' claimed rent expense of $1,275 in its calculation of discretionary income, little would be served by allowing the Pansiers to present evidence about their rental expenses, so their request for a hearing on that issue is denied.

Finally, the Court will address the Pansiers' request for clarification concerning the requirement that they appear in person for future hearings on contested matters. They ask: "[T]o insure that all parties are treated equally, opposing counsel or the United States Trustee would be required to appear in person, also. Is that correct?" CM-ECF Doc. No. 89, at 10. That is not correct. The Court instituted the personal-appearance requirement as to the Pansiers only, given Mr. Pansier's lack of decorum in telephone hearings. Subsequent hearing notices the Court issues in this case and any related adversary proceedings will state whether the hearing will be for scheduling, or a contested matter that requires the Pansiers' personal appearance in Green Bay.

## CONCLUSION AND ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that reconsideration is GRANTED in part and the Court's February 22, 2019 order is AMENDED to state that the stay of 11 U.S.C. § 362 is modified to permit the United States to exercise its rights and remedies with respect to up to $2,309.33 of Mr. Pansier's pension income under applicable nonbankruptcy law, for the purposes of seeking to collect the Pansiers' tax liabilities for tax years 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, and 2014, only.

IT IS FURTHER ORDERED that the Pansiers' request for an evidentiary hearing is DENIED.

IT IS FURTHER ORDERED that this decision is deemed a resolution of the Pansiers' motion to compel (CM-ECF Doc. No. 90), and the Court will require no further response or action on the matter.

Dated: April 3, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge