UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Gary L. Pansier and                          Case No. 18-22297-beh
Joan R. Pansier,

                      Debtors.              Chapter 7

## DECISION AND ORDER DENYING DEBTORS' MOTION FOR RECUSAL

These *pro se* debtors, Joan and Gary Pansier, have filed a motion
requesting that the bankruptcy judge recuse herself from presiding over their
main bankruptcy case and two related adversary proceedings (Adv. Nos. 18-
2129 and 18-2222). The United States Trustee, and the United States as a
creditor of these debtors, have each filed responses opposing the recusal
request. Because the Court's rulings and other statement excerpts on which
the debtors base their motion are not the result or reflection of any
extrajudicial bias or legally cognizable lack of impartiality within the meaning
of 28 U.S.C. § 455(a), the motion will be denied.

### DISCUSSION

**A.     Legal Standards for Disqualification**

28 U.S.C. § 455(a) provides that a federal judge "shall disqualify himself
in any proceeding in which his impartiality might reasonably be questioned."
28 U.S.C. § 455(a) (made applicable here by Fed. R. Bankr. P. 5004(a)). *See
also* Canon 3(C)(1)(a) of the Code of Conduct for United States Judges.

"Section 455 clearly imposes a duty directly on the judge to evaluate his
own conduct and rule on the disqualification issue." *In re Gibson*, Case No. 04-
71343, 2010 WL 744572, at *2 (Bankr. C.D. Ill. Feb. 26, 2010). In doing so,
the judge is not required "to accept all allegations by the moving party as true,"
because "[i]f a party could force recusal of a judge by factual allegations, the

result would be virtual open season for recusal." *Id.* (internal citations and quotation marks omitted). Disqualification, therefore, "should be viewed as an extraordinary occurrence," and "'a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified.'" *In re Stoller*, 374 B.R. 618, 621 (Bankr. N.D. Ill. 2007) (quoting *Laird v. Tatum,* 409 U.S. 824, 837 (1972)); *see also In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir. 1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping.") (citation omitted).

The statute does not require recusal when the claim is based on "unsupported, irrational or highly tenuous speculation." *See In re Martinez–Catala,* 129 F.3d 213, 220 (1st Cir. 1997) (quoting *In re United States,* 666 F.2d 690, 694 (1st Cir. 1981)). In addition, "a party moving for recusal has the burden of producing facts which would raise doubts about the judge's impartiality." *Stoller*, 374 B.R. at 622.

The test under 28 U.S.C. § 455(a) is whether a reasonable person would perceive a significant risk that the judge will resolve the case on a basis other than the merits. *Hook v. McDade,* 89 F.3d 350, 354 (7th Cir. 1996). This is an objective inquiry, which asks how things appear from the perspective of a thoughtful and well-informed observer, not a "hypersensitive, unduly suspicious person." *Id.* "That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). In addition, the risk must be one that is substantially out of the ordinary, because, as the Seventh Circuit has explained:

> Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. A thoughtful observer understands that putting disqualification in the hands of a party, whose

real fear may be that the judge will apply rather than disregard the law, could introduce a bias into adjudication.

*Hook*, 89 F.3d at 354.

The debtors' recusal motion asserts that the Court's alleged bias is demonstrated by (1) the Court's adverse rulings and (2) excerpts of its statements at related hearings, but does not claim there is bias from any "extrajudicial source."

Adverse judicial rulings alone "almost never constitute a valid basis for a bias or [§ 455(a)] partiality motion," and may be proper grounds for appeal, but not for recusal. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* This standard is not met simply because a judge has rejected a party's arguments or spoken harshly to him. Such "ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556. "Attorneys and parties who disagree with a judge's assessment of their positions have many remedies and protections, but recusal is not one of them except in extreme cases." *In re City of Milwaukee*, 788 F.3d 717, 722–23 (7th Cir. 2015) (a district judge's warning to counsel that they should not repeat any "non-starter arguments that were raised" in other cases unless they wanted "to find themselves on the short end of the stick with sanctions" did not raise a reasonable concern of the judge's impartiality calling for his recusal because the warning fell into the category of ordinary courtroom administration; "[e]ffective case management sometimes calls for such warnings to avoid waste of time and distraction from the principal issues").

The second prong of the debtors' recusal motion invokes due process concerns. *See* ECF Doc. No. 100, at 10 ("After being presented with examples

of the 'appearance of partiality' and a judge does not disqualify herself, then the judge is in violation of the Due Process Clause of the U.S. Constitution.") (citing *United States v. Scuito*, 521 F.2d 842, 845 (7th Cir. 1996)). To establish a due process violation, movants must show more than the appearance of impartiality required by section 455(a); instead, they must prove actual prejudice or partiality, which requires "serious facts." *Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir. 1981) ("[A] litigant is not denied due process by either the 'appearance' of partiality or by circumstances which might lead one to speculate as to a judge's impartiality. A litigant is denied due process if he is in fact treated unfairly.").

It is the Court's task to apply these principles to each of the twelve specific statement excerpts or rulings identified by the movants as indicative of partiality and thus requiring disqualification. To understand and measure the fairness of the treatment afforded to the debtors over the 16-month duration of their case and related adversary proceedings so far, the discussion below provides fuller context from the hearing audio from which the debtors' motion gives excerpts.

**B.    Applying the Standards to the Challenged Rulings and Statements**

**1.    The Court's statements at an August 16, 2018 pretrial conference in Adv. No. 18-2129-beh**

On June 11, 2018, the debtors filed an adversary complaint seeking a determination that their tax debts were dischargeable and naming the State of Wisconsin Department of Revenue and the Internal Revenue Service as defendants. Neither the caption of the complaint, nor the paragraphs naming the defendants, identified the United States Trustee as a party to the action. *See* Adv. No. 18-2129-beh, ECF Doc. No. 1, ¶¶ 3 and 4. Nevertheless, the complaint included a request for injunctive relief against the U.S. Trustee, asking the Court to "order the Office of the U.S. Trustee to refrain from [investigating the debtors' interests in] the property at N6755 Loop Lake Road, Crivitz, Wisconsin"—the property where the debtors reside, and which the

debtors assert is held by an irrevocable trust, the Sheffield Crest Trust[1]—including by conducting a Rule 2004 examination of the debtors. *See id.* at 5 and ¶ 10.

The theory asserted in the debtors' complaint was that *res judicata* and collateral estoppel prevented the U.S. Trustee from "trying to determine whether the debtors have an equitable interest in the real property" held by the Sheffield Crest Trust, because the U.S. Trustee did not raise the issue in the debtors' three prior bankruptcies dating back to 1990. *See, e.g.*, *id.* ¶ 8 ("The Schedules A/B submitted in the bankruptcies contain sworn statements of our personal assets and property, none of which include evidence that we have an equitable interest in the property at N6755 Loop Lake Road, or any other real property in 1990, 1998, 2008 or in the 2018 bankruptcy petition. Therefore, pursuant to the doctrines of *res judicata* and *collateral estoppel,* the Office of the U.S. Trustee is precluded from relitigating or revisiting this claim or issue in the instant case.").

On July 16, 2018, the U.S. Trustee moved to dismiss the debtors' adversary proceeding as against the U.S. Trustee only, citing Fed. R. Civ. P. 12(b)(6) (incorporated by Fed. R. Bankr. P. 7012). *See* Adv. No. 18-2129-beh, ECF Doc. No. 7. In his motion, the U.S. Trustee first noted that the complaint failed to name the U.S. Trustee as a defendant, and further argued that the complaint should be dismissed because it failed to state a claim for injunctive relief based on *res judicata* and collateral estoppel, which do not apply in the circumstances.

---

[1] An on-going issue in the debtors' case is their failure to disclose their interests in multiple trusts. For example, their March 2018 petition and original schedules disclosed no "legal or equitable interest" in any trusts, nor did they disclose that they pay rent to live in their home to Sheffield Crest Trust, something they only later disclosed to the U.S. Trustee. At their Rule 2004 examinations in September 2018, the debtors described the purposes for which they used other tax-planning devices, namely the Fly Slow F.O. Trust and the Tuscany Trail Trust. For the first time, at a June 21, 2019 discovery hearing, Mrs. Pansier clarified there are *two* Fly Slow F.O. Trusts—the Fly Slow F.O. Living Trust and the Fly Slow F.O. CT, CL Trust.

The Court held an initial telephonic pretrial conference on August 16, 2018.  At that hearing, the Court construed the U.S. Trustee's motion to dismiss under Rule 12(b)(6) as a request for a declaratory order that the U.S. Trustee was not a defendant in the action.  *See, e.g.*, *Blasingim v. Hill*, No. 1:08-CV-2117-JEC-JFK, 2008 WL 11320088, at *3 (N.D. Ga. Sept. 8, 2008), *report and recommendation adopted*, No. 1:08-CV-2117-JEC, 2008 WL 11320126 (N.D. Ga. Oct. 14, 2008) (recommending that the State of Georgia's motion to dismiss under Rule 12(b)(6) for failure to name the State properly as a defendant be denied, because the plaintiff's failure to designate the State as a defendant meant that the State was not a party to the lawsuit and therefore did not have standing to dismiss pursuant to 12(b)(6), but further recommending that "to the extent Plaintiff seeks relief against the State of Georgia in this case," all such claims be dismissed for failure to comply with Fed. R. Civ. P. 4(a) and 10(a)).

The Court concluded that the debtors' failure to name the U.S. Trustee as a defendant in the caption, as well as in the text of their complaint when identifying parties to the action, rendered the complaint insufficient to state any claim against the U.S. Trustee.  *See, e.g., Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process. . . . Naming and serving defendants is vital. How can one defend without first becoming a party?").  The Court therefore granted the U.S. Trustee's request on the record, and later entered a declaratory order to that effect.  *See* Adv. No. 18-2129-beh, ECF Doc. No. 13.

The recusal motion incorrectly describes the Court's order as

grant[ing] the U.S. Trustee's Fed. R. Civ. P. 12(b)(6) motion . . . by converting the U.S. Trustee's Motion *sua sponte* into a motion for declaratory relief in order to accommodate the Trustee.  In other words, the Court allowed the U.S. Trustee to be dismissed from the adversary proceeding because they were not named as a defendant in the caption,

but granted the U.S. Trustee their motion to dismiss even though they
lacked standing to pursue relief pursuant to Fed. R. Civ. P. 12(b)(6).

ECF Doc. No. 100, at 2. The Court previously informed the debtors that this
description of the August 16, 2018 ruling was inaccurate.[2]

The recusal motion then asserts that the Court displayed partiality at the
August 16 pretrial conference in the following manner:

> When the Debtors asked the Court for a clarification on this issue from
> the United States Trustee, Judge Hanan answered for the Trustee and
> were [*sic*] told the Debtors that: "I'm not here to act as your
> attorney." . . . Judge Hanan then made it clear that as litigants, the
> Debtors, but not the government were only allowed to "respond with
> affirmative statements or disagree with the Trustee or her role as a
> Trustee," and were not allowed to be heard on their arguments during
> the hearing stating "you had some time to do that before the hearing to
> do this." . . .
>
> When Mr. Pansier asked to be heard on the matter, the Debtors were told
> that "only one of you can speak" even though it was a joint bankruptcy
> petition. . . . Evidently, a parties' [*sic*] Sixth Amendment right to a
> hearing entails that individuals maintain and be afforded their legal right
> to be heard in the venue of a court of law with adequate due process
> attached, does not apply in Judge Hanan's courtroom.

ECF Doc. No. 100, at 2–3.

To place the excerpts above in their proper context, the Court reproduces
below additional relevant portions of the parties' exchange during that hearing:

| Court: | So, a couple of matters, with regard to the adversary complaint. . . . The first is that the U.S. Trustee has filed a motion to dismiss. . . . I'm going to start with you Ms. Steele. |
|---|---|
| L. Steele: | Your honor, we filed a motion to dismiss this case, first of all because we weren't named as defendants, but we were referenced seeking relief in this complaint, so for completeness of response, we wanted to put on the record our position on this request. So we filed this motion pursuant to 12(b)(6) because it does not state a claim for relief against the United States Trustee. Secondarily, the Court has already granted our Rule 2004 motion in the underlying bankruptcy case, and so we |

---

[2] *See* Adv. No. 18-2129-beh, ECF Doc. No. 19, at 3 ("[T]he debtors mischaracterize the record
and the Court's prior rulings in this case. The debtors assert that 'the Court granted the [U.S.]
Trustee's [motion to dismiss] in spite of the fact that the [U.S.] Trustee lacked standing to file a
12(b)(6) motion.' That is not an accurate description of the Court's ruling.").

|  | believe that any request for relief the debtors would be requesting through this compliant are mooted by the Court's previous ruling on the 2004 exam.[3] |
|---|---|
| Court: | Mrs. Pansier, would you like to respond? |
| J. Pansier: | I just need a point of clarification if we could. The Trustee maintained in their brief that the request for the 2004 examination and documents that we provided to the standing trustee in the 2008 bankruptcy don't count because the U.S. Trustee didn't file an appearance in the case. Now she's saying in this case the Trustee has a legitimate cause for a 2004 examination but didn't file an appearance in this case either. At the same time, they're asking that they want to have the complaint dismissed as to the U.S. Trustee. Can they have it both ways, where they're listed on the docket as a party, an interested party, when they want to, and have it dismissed when they don't want to be involved in the case? Is that how it works? |
| Court: | [T]his is your chance to make some argument about the motion to dismiss that the U.S. Trustee has brought concerning the adversary complaint that you have filed. So, you can respond with affirmative statements and either say you agree that it's moot because of how the Court ruled earlier on the 2004 exam, or you disagree, you think the U.S. Trustee ought to be a party, or whatever your thoughts are on what you think the U.S. Trustee's role is. So, I'm not here to be your lawyer, ma'am. It's more to ask your position on what the U.S. Trustee has filed. |
| J. Pansier: | We're just asking for clarification from the U.S. Trustee, your honor. |
| Court: | Well, I think you've had some time to do that before this noticed hearing, so, do you have a position on the motion? |
| G. Pansier: | Your honor, is the Trustee on the phone? |

---

[3] This statement refers to the Court's July 30, 2018 order granting the U.S. Trustee's motion to conduct a Rule 2004 examination of the debtors. *See* ECF Doc. No. 48. In granting that motion, the Court overruled the debtors' objection, in which they asserted that the U.S. Trustee could not obtain documents or information about the Sheffield Crest Trust, based on their theory that the U.S. Trustee was barred from revisiting or relitigating their real property ownership interests due to *res judicata* and collateral estoppel.

<table>
<tr><td>Court:</td><td>Mr. Pansier, one of you can speak for the two of you in this hearing, so I have a question for your wife.[4]</td></tr>
</table>

*See* Adv. No. 18-2129-beh, ECF Doc. No. 10 (audio at 14:50–19:15).

A thoughtful and well-informed observer would not view this exchange to reflect a "'deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *Matter of Huntington Commons Assocs.*, 21 F.3d 157, 159 (7th Cir. 1994) (quoting *Liteky,* 510 U.S. at 556). Rather, the Court's statements demonstrate, among other things, its effort to avoid providing legal advice to *pro se* litigants, which itself could undermine the judge's role as an impartial decisionmaker. *See Pliler v. Ford*, 542 U.S. 225, 231–32 (2004) (citing *McKaskle v. Wiggins,* 465 U.S. 168, 183–84 (1984) ("A defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure" and "the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course.")). At most, the Court's comments evidence "ordinary efforts at courtroom administration," which "remain immune" from partiality challenges.

## 2.    Timing of the denial of the debtors' motion to amend their complaint in Adv. No. 18-2129-beh

On August 29, 2018—after the Court ruled that the U.S. Trustee was not a defendant in Adv. No. 18-2129-beh—the debtors filed a motion for leave to amend their complaint to add the U.S. Trustee as a defendant. Shortly

---

[4] At the beginning of the August 16 hearing, after introductions were made and the Court described the matters set for hearing, the Court stated that it would first consider the debtors' motion for sanctions against the IRS, noting that it had read what the parties had filed but would allow some brief comment. The Court then asked, "Mrs. Pansier, are you going to speak for you and your husband?" Mrs. Pansier responded, "Yes, I am." *See* Adv. No. 18-2129-beh, ECF Doc. No. 10 (audio at 0:55–2:42). During other hearings in this case, the Court has requested Mr. Pansier's input and/or allowed him to make legal argument, *see, e.g.*, ECF Doc. No. 84 (audio of February 20, 2019 hearing, at 22:42–24:33); Adv. No. 18-2222, ECF Doc. No. 43 (audio of June 21, 2019 hearing, at 5:00–6:05); *see also* ECF Doc. No. 87, at 10 (recognizing that "both debtors may make legal arguments, as their case essentially is a joint administration of two Chapter 7 cases"). The Court's conduct at the August 16 hearing could not be perceived as causing any prejudice to the debtors (nor, as the debtors' assert, did it impinge on any "Sixth Amendment right to a hearing," which applies only in criminal cases).

thereafter, on August 31, the Court issued a decision and order denying the motion, after concluding as a matter of law that allowing the debtors to amend would be futile. *See* Adv. No. 18-2129-beh, ECF Doc. No. 19. The Court's decision was based solely on its consideration of the facts introduced in the proceeding and the applicable law. The recusal motion does not point to any specific findings or statements in that ruling which demonstrate a deep-seated favoritism or antagonism that would make fair judgment impossible.

The recusal motion suggests only that the Court's issuance of its ruling *before* waiting for the U.S. Trustee to respond to the debtors' motion is evidence of partiality or bias. A thoughtful and well-informed observer would not consider a failure to provide *the U.S. Trustee* with an opportunity to weigh in on the debtors' motion as creating prejudice for *the debtors*.[5]

### 3. Denial of the IRS' motion to conduct a Rule 2004 examination of the debtors

On August 28, 2018, the United States, on behalf of the Internal Revenue Service, filed a motion in Adv. No. 18-2129-beh, seeking to question the debtors at a previously-scheduled September 12, 2018 Rule 2004 examination—which the Court had authorized the U.S. Trustee to conduct by an order entered in the debtors' main case. *See* Adv. No. 18-2129-beh, ECF Doc. No. 14; Case No. 18-22297, ECF Doc. No. 48.

In an August 29, 2018 order, the Court *denied* the United States' request to the extent it could be read as seeking authorization to conduct a separate Rule 2004 examination. *See* Adv. No. 18-2129-beh, ECF Doc. No. 17, at 2

---

[5] In its decision, the Court also noted that while "[t]he United States Trustee has not yet responded to the debtors' motion, . . . many of the arguments in the U.S. Trustee's original motion to dismiss are reflective of those the Court would expect to see in a response to the present motion." Advancing the timing of the decision on the debtors' motion to amend also preserved an existing discovery timetable by clarifying that the motion could not be used to avoid or delay the debtors' imminent September 12, 2018 Rule 2004 examination. *See* Adv. No. 18-02129, ECF Doc. No. 19, at 1 ("The debtors seek leave to amend their adversary complaint to add the United States Trustee as a defendant. They believe such an addition will prevent the U.S. Trustee from proceeding to conduct a Rule 2004 examination that the Court has approved and that is scheduled to take place in less than two weeks . . . .").

("[T]o the extent the United States' motion can be construed as a motion to conduct its own Rule 2004 examination in lieu of discovery under the Federal Rules of Civil Procedure, such a request is denied."). The Court clarified that discovery rules, rather than Rule 2004, applied to the United States' request, and that nothing in the Court's order prevented the IRS from employing those (more restrictive) rules, nor was Court permission required to do so. *See id.* ("[N]othing in this order should be read to preclude counsel for the United States from appearing at the previously-scheduled September 12, 2018 examination, or from seeking to question the debtors at the same time, through the means afforded, and within the scope authorized, by the Federal Rules of Civil Procedure. Leave of the Court is not necessary to do so.") (citing Fed. R. Civ. P. 30(a)(1)); *see also* Adv. No. 18-2129-beh, ECF Doc. No. 24, at 2 (describing the Court's August 29, 2018 order as "clarif[ying] that the United States was free to seek discovery in accordance with Bankruptcy Rule 7030—in other words, nothing precluded the United States from issuing a notice of deposition to the debtors and scheduling the deposition to be held in conjunction with the U.S. Trustee's Rule 2004 examination. Scheduling a deposition of the debtors at the same time as the Rule 2004 examination would save time and resources for all parties involved—particularly the debtors, who would need to travel from Crivitz only once for the dual-purpose examination, and who previously suggested scheduling difficulties due to Mr. Pansier's health.").

The recusal motion misapprehends the Court's denial of the United States' Rule 2004 request as an order "convert[ing] the United States' motion to appear and question the debtors at the Rule 2004 Examination into a motion allowing the government to question the Debtors within the scope authorized

by the [*sic*] Fed. R. Civ. P. 30(a)(l),” and then granting that motion.[6]  The
debtors then claim that the Court’s “granting” of the motion before allowing the
debtors to respond is evidence of partiality or bias.

A thoughtful and well-informed observer would regard the Court’s *denial*
of the United States’ motion as a legal determination based solely on
consideration of the facts introduced in the proceeding and the applicable law,
and not as a basis for recusal.  A thoughtful and well-informed observer also
would not view the Court’s denial of the motion—a denial which was *not*
adverse to the debtors, even though issued before the debtors responded—as
demonstrating a deep-seated favoritism or antagonism that would make fair
judgment impossible.

### 4.    Denial of the debtors’ motion to depose counsel for the IRS at the debtors’ Rule 2004 examination

On September 6, 2018, the debtors filed a motion in Adv. No. 18-2129-
beh, seeking to question the U.S. Attorney at the previously-scheduled
September 12, 2018 Rule 2004 examination of the debtors.  *See* Adv. No. 18-
2129-beh, ECF Doc. No. 22.  In that motion, the debtors misconstrued the
Court’s August 29, 2018 order denying the IRS’s Rule 2004 request the same
way they do now, claiming that “[w]hen the Court granted the United States’
Motion before giving the Plaintiffs an opportunity to respond or object, this was
a clear and blatant violation of their due process rights.”  *Id.* at 2.

On September 19, 2018, the Court issued an order clarifying that it had
denied—not granted—the United States’ motion to conduct a Rule 2004
examination, and also denied the debtors’ request for the same reasons it
denied the United States’ Rule 2004 request.  *See* Adv. No. 18-2129-beh, ECF

---

[6]  The Court previously advised the debtors that this description of its order is inaccurate.  *See*
Adv. No. 18-2129-beh, ECF Doc. No. 24, at 2 (noting that “the Court *denied* the motion to the
extent it sought judicial action, and clarified that discovery rules applied and were available to
the United States”).

Doc. No. 24 (also noting that the debtors had failed to show the propriety of deposing the *attorney* for the United States, rather than the party itself).[7]

The debtors' recusal motion also faults the Court for (1) failing to act on the debtors' Rule 2004/discovery motion within 24 hours, as they claim the Court did in denying the United States' motion, and (2) failing to "address[] the Debtors['] due process concerns." But denial of the debtors' motion on September 19, rather than on September 7, could not have prejudiced the debtors. And no due process concerns were implicated by the Court *denying* the United States' motion (to the extent it sought judicial action) before waiting for the debtors to respond.

A thoughtful and well-informed observer would not view the Court's denial of the debtors' motion to examine the U.S. Attorney—a legal determination based solely on consideration of the facts introduced in the proceeding and the applicable law—as demonstrating a deep-seated favoritism or antagonism that would make fair judgment impossible.

### 5. Reason for the denial of the debtors' motion for leave to amend their complaint in Adv. No. 18-2129-beh

As noted above, on August 31, 2018, the Court denied the debtors' motion for leave to amend their complaint in Adv. No. 18-2129-beh, to add the U.S. Trustee as a defendant. The purpose of the proposed amendment was to attempt to state a cause of action against the U.S. Trustee for injunctive relief, to prevent the U.S. Trustee from "demanding records that the government already has in its possession or threatening the Plaintiffs with possible objections to discharge, dismissal of the case, or a 2004 Examination . . . regarding the property at N6755 Loop Lake Road, Crivitz, Wisconsin." Adv. No. 18-2129-beh, ECF Doc. No. 1, at 5 and ¶ 10.

---

[7] As the United States notes in its response to the instant motion, "[d]eposing an opponent's attorney is a drastic measure. It not only creates a side-show and diverts attention from the merits of the case, its use also has a strong potential for abuse." *M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992). ECF Doc. No. 104, at 4.

In their motion for recusal, the debtors continue to disagree with the Court's earlier rejection of their *res judicata* and collateral estoppel arguments. The Court based its prior legal conclusion on a determination that an order entered in the debtors' previous bankruptcy case (Case No. 08-32400-svk, ECF Doc. No 48) *does not* constitute a final determination on the merits and therefore does not establish preclusively that documents related to the Sheffield Crest Trust "do not suggest grounds for objecting to the [debtors'] discharge." As the Court explained, the only issue before the bankruptcy court in the debtors' prior case when it issued its March 24, 2009 order was whether to extend the deadline for the Chapter 7 trustee to object to the debtors' discharge—not whether there was, in fact, a basis to object to the debtors' discharge by virtue of the trust documents or otherwise. To the extent the debtors believe this Court's conclusions as to *res judicata* and collateral estoppel are "less than candid," or otherwise in error, such disagreement was a matter for an appeal, not a motion to recuse. The Court's findings were based on its impartial application of the facts before it to the applicable law, and a thoughtful, well-informed observer would not view those findings and conclusions to demonstrate a deep-seated favoritism or antagonism that would make fair judgment impossible.

### 6. Denial of the debtors' motion for leave to amend their complaint in Adv. No. 18-2129-beh based solely on the moving papers

The recusal motion next takes issue with the Court's denial of debtors' motion to amend before conducting a trial on the merits:

> Before the trial on the merits in the adversary proceeding or even before a trial date has been set, in her [decision denying the debtors' motion for leave to amend], Judge Hanan proceeded to argue and litigate the elements of *res judicata* and *collateral estoppel* for and in favor of the government and reached the conclusion that the filing of an amended complaint by the Plaintiffs would "be futile." By her actions, the integrity and dignity of the judicial process has been seriously compromised, and seriously reflects a predisposition against the Plaintiffs as *pro se* litigants.

ECF Doc. No. 100, at 5.

Again, the debtors' disagreement with the Court's legal ruling was a matter for appeal, not a motion to recuse. And no trial was necessary for the Court to determine as a matter of law that an amended complaint could not state a claim for relief; the very purpose of a dismissal with prejudice under Rule 12(b)(6) is to avoid the time and expense of proceeding to a trial on a meritless complaint. A thoughtful and well-informed observer would not consider the Court's adverse ruling on the motion to amend as establishing a basis for disqualification in the circumstances.

### 7. Statements in the decision denying the debtors' motion for leave to amend their complaint in Adv. No. 18-2129-beh, contrasted with the Court's granting of the U.S. Trustee's Rule 2004 examination request

Next, the recusal motion characterizes the Court's order denying the debtors' motion for leave to amend as "faulting" them for submitting "fourteen pages of legal authority and argument in this adversary proceeding, twenty-one pages of such material in their main case, and innumerable pages in their prior three bankruptcies and related adversaries." The Court's actual statement taken from its order is reproduced below in full:

> The debtors also suggest that, because they are unrepresented, "the likelihood that the 2004 Examination will be used for an improper purpose to harass and intimidate them seems likely." There is no basis for this conjecture. The debtors have chosen to proceed without retained counsel, but admit that Mrs. Pansier has a law degree, and is clearly capable of researching and drafting documents with legal support. To date, the debtors have submitted fourteen pages of legal authority and argument in this adversary proceeding, twenty-one pages of such material in their main case, and innumerable pages in their prior three bankruptcies and related adversaries. In light of the litigation history between these debtors and the taxing authorities, the Court cautioned all parties at the most recent hearing that it will not tolerate undue delay or discourtesy. *See* CM-ECF, Doc. No. 10 (audio of August 16, 2018 hearing). The above insinuation is more of the same. The Court expects

the 2004 examination to proceed in a professional, cooperative, and expeditious manner.

Adv. No. 18-2129-beh, ECF Doc. No. 19, at 8–9. A thoughtful, well-informed observer would not consider the Court's actual reference to the debtors' ability to represent and advocate for themselves as a basis for judicial disqualification.

The recusal motion continues: "At the same time, Judge Hanan is allowing the United States Trustee to go back in time thirty-three years and demand production of 'all documents regarding the Sheffield Crest Trust including a list of trustees and beneficiaries,' documents that were previously provided to the Trustee Larry Liebzeit in the Debtor's [*sic*] previous bankruptcy." According to the debtors, "Judge Hanan's Court does not provide an equal playing field when it comes to *pro se* litigants who are entitled to a 'Equal Justice Under The Law' and a legal system that will treat them the same as every person in order to obtain a fair result. Instead, Judge Hanan's Court is one that offends every notion of justice."

The movants seem to be claiming that the Court displayed partiality within the meaning of section 455(a) by granting the U.S. Trustee's Rule 2004 examination request, a decision the Court made based solely on the facts learned in presiding over this case and its impartial application of those facts to the applicable law. The debtors have offered no facts to meet their burden to show that the Court would have ruled differently had they been represented, or that the Court treats *pro se* litigants less favorably than represented litigants as a matter of course. *See Stoller*, 374 B.R. at 622.

**8. Statements made at the August 16, 2018 pretrial conference in Adv. No. 18-2129-beh, contrasted with the Court's granting of the U.S. Trustee's Rule 2004 examination request**

At the August 16 pretrial conference, the Court set a discovery schedule concerning the debtors' claims against the IRS and Wisconsin Department of Revenue. The debtors' complaint seeks a determination that the tax debts they owe to the IRS for tax years 1995 through 2006 and 2014 (which total $256,540.28, according to the IRS's proof of claim) and the WDOR for tax years

1995 through 2006 and 2014 (which total $265,562.43, according to the WDOR's proof of claim)[8] are dischargeable under 11 U.S.C. § 523(a)(1). In answering the complaint, the IRS denied that the debtors' 1995 through 2006 federal income tax liabilities are dischargeable, due to the "debtors' willful attempt to evade or defeat payment of those taxes," *see* § 523(a)(1)(C), and denied that the debtors' 2014 tax liabilities are dischargeable because their 2014 tax returns were not due more than three years prior to the petition date, *see* § 507(a)(8). Adv. No. 18-2129-beh, ECF. Doc. No. 6. The WDOR, for its part, admitted that, if the debtors receive a discharge, their personal liability for taxes due for tax years 2002 through 2008 will be discharged, but denied that the taxes due for tax years 1998, 1999, and 2014 (as well as 1991 and 1994, which are not mentioned in the complaint) are dischargeable. *See* Adv. No. 18-2129-beh, ECF. Doc. No. 5.

     At the pretrial conference, the Court discussed setting a discovery schedule with the parties as follows:

| | |
|---|---|
| Court: | It looks to me like . . . based on the defenses raised that there are some factual issues, for instance, the willful evasion, and that there may be some discovery needed. Am I wrong on that Ms. Phillips? |
| L. Taylor-Phillips: | No your honor, you're not wrong on that. |
| Court: | Ok, how much time do you think would be required? |
| L. Taylor-Phillips: | I would say maybe 60 days, your honor. |
| | . . . |
| Court: | OK, Mr. McNeilly, what about you? |
| J. McNeilly: | I'm not sure there is any discovery we need to do, but 60 days is fine if there is. |
| Court: | . . . And were you envisioning undertaking any discovery Mrs. Pansier? |

---

[8] Although the debtors' complaint refers to their WDOR tax liability for only tax years 1995 through 2006 and 2014, the WDOR filed a proof of claim for tax years 1991, 1994, 1998, 1999, 2001, 2002, 2003, 2005, 2006, 2008, 2014, and 2017, together totaling $480,251.39.

| | |
|---|---|
| J. Pansier: | Yes. |
| Court: | What would that be? |
| J. Pansier: | Right off the top of my head, as far as the Wisconsin Department of Revenue, they indicated in their answer that there were tax warrants. We have never been served with a certified tax warrant from the Department of Revenue. So that would be part of our discovery. |
| Court: | Anything else? |
| J. Pansier: | No, but I'm sure we can come up with something as far as the Internal Revenue Service. It goes back to 1995, so it's a little complicated. |
| Court: | Ok, well, I think 60 days will be enough. |
| J. Pansier: | Yes. |
| L. Taylor-Phillips: | Your honor . . . I would ask that the Court make it clear that . . . any discovery that Mrs. Pansier wants to serve on the United States, that it's relevant to the issue in this adversary proceeding and not unload a bunch of irrelevant requests on the government, because essentially this is the government's burden and therefore it probably should be little to no discovery coming from the Pansiers. |
| Court: | I think that's right and the Pansiers have decided to file this, so they should have had a plan for whatever it is they need for their complaint, so we aren't going to drag this out, so 60 days. . . . |

. . .

| | |
|---|---|
| J. Pansier: | We object to the presumption right off the bat by Ms. Phillips that we would be submitting overreaching discovery requests. That's unfair. |
| Court: | I understand there is a long history of litigation between these parties and there may not be the best of feelings between people, but I expect the height of efficiency and focus and cooperation and adherence to the Federal Rules. . . . And if there has to be any motions to compel, I'm going to look at those very strictly, and we're going to move this along. |

*See* Adv. No. 18-2129-beh, ECF Doc. No. 10 (audio at 39:26–45:00).

The recusal motion faults the Court for (1) asking counsel for the IRS and the WDOR if 60 days would be sufficient for discovery, while "neglect[ing] to ask the Plaintiffs if this time period was adequate"; and (2) asking the

debtors "what their plan for discovery was, commenting that because 'they filed the adversary proceeding, they should already have a plan,'" while choosing "not to make the same inquiry of the Defendants." These are semantics. As the above exchange shows, the Court gave all parties an equal opportunity to weigh in on the discovery schedule, and its statements and actions do not show partiality for or against any party. *See Liteky,* 510 U.S. at 555–56 (ordinary efforts at courtroom administration not a basis for disqualification).

The recusal motion also contrasts what it calls the Court's "agree[ment] with the U.S. Attorney that 'there should be little or no discovery'" in the adversary proceeding with its order authorizing the U.S. Trustee to conduct a Rule 2004 examination of the debtors in the main case, which the debtors describe as ordering "the Plaintiffs/Debtors to produce over 225 pages of documents going back thirty-three (33) years and submit to a 6 1/2 hour deposition by both the U.S. Trustee and the U.S. Attorney simultaneously." Considerations in granting a Rule 2004 request in a main bankruptcy case are not the same as those in setting a discovery schedule in an adversary proceeding. *See, e.g.*, *In re J.&R. Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) ("Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, Rule 2004 has been rightly characterized as a 'fishing expedition.' It is a broad-ranging inquiry into the debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate."). A thoughtful and well-informed observer could not view the Court's statements at the hearing to engender "significant doubts that justice would be served in this case with Judge Hanan presiding," as the movants claim.

### 9. The February 20, 2019 hearing and decision on the IRS' motion to lift the stay

On December 3, 2018, the United States Internal Revenue Service moved for relief from the automatic stay to reinstate its monthly collection of debtor Gary Pansier's pension income. ECF Doc. No. 66. The debtors objected for a

number of reasons, including that the United States had failed to establish both (1) the Court's jurisdiction and (2) the United States' standing to bring the motion. Specifically, the debtors claimed that the motion was "defective due to the fact that it does not provide a jurisdictional statement, and the United States failed to file a notice of appearance in this case. Visibly absent from their motion is a statement that the United States has . . . statutory authority to represent the Internal Revenue Service." ECF Doc. No. 72, at 10. The Court held a telephonic hearing on the motion on February 20, 2019.

The debtors' recusal motion asserts that, during the February 20 hearing (which the motion describes as being held on February 2), when the debtors raised "this issue"—*i.e.*, their challenge that the IRS's motion "was defective because the U.S. Attorney failed to file an appearance in the case and its motion did not contain the required jurisdictional statement to show that the Department of Justice had standing to represent the Internal Revenue Service in this core proceeding"—"in lieu of requesting a response from the U.S. Attorney on the matter, Judge Hanan once again answered for the government and simply concluded that 'I am not concerned about jurisdiction.'" ECF Doc. No. 100, at 7.

Reference to the fuller hearing audio provides useful context. The following exchange occurred after the Court asked Mrs. Pansier why she referenced *In re Muller*, 72 B.R. 280 (C.D. Ill. 1987), during oral argument on the motion:

J. Pansier: Well, it addresses the issue of jurisdiction. . . . The government didn't put in a jurisdictional statement at all in their motion.

Court: Ok, well as far as jurisdiction goes, determining whether a stay should be in effect or lifted is a core matter for bankruptcy courts, so I'm not concerned by your jurisdictional argument, so you can go on with other parts of your arguments.

ECF Doc. No. 84 (audio of February 20, 2019 hearing, at 10:30–12:00). Later at the hearing, Mr. Pansier raised the same argument:

Court: So at the start I asked Mrs. Pansier if she was going to speak for both debtors and she said yes, but then somewhere in the middle

|              | Mr. Pansier wanted to say something so now I'm going to give you a chance to say something briefly Mr. Pansier. |
|--------------|----------------------------------------------------------------------------------------------------------------|
| G. Pansier:  | All I was saying is, [counsel for the Unites States] hasn't proved jurisdiction to . . . be in the court to represent the IRS, a foreign corporation. And that's all I'm saying. She hasn't proved anything at all in that area. |
| Court:       | Ok, thank you. I already ruled on that, several hearings ago, and that stands. |
| G. Pansier:  | I don't know what your ruling is. You're saying they don't need jurisdiction? |
| Court:       | . . . I already ruled that Ms. Taylor-Phillips can represent the IRS as a lawyer for the U.S. Justice Department in this proceeding, and that's several hearings ago, when you raised that. [9] |

---

[9] At the August 16, 2018 pretrial conference in Adv. No. 18-2129-beh, the Court found merit to the IRS's affirmative defense that the debtors improperly named the IRS as a defendant (because the IRS cannot be sued in its own name, and therefore the United States is the proper party defendant) and stated that it would order the docket and case caption to reflect that the United States, rather than the Internal Revenue Service, was the proper defendant in the action. When the Court asked Mrs. Pansier if that made sense, the following exchange ensued:

J. Pansier: . . . The reason we filed it as to the Internal Revenue Service was because that's the way the attorneys did it in our previous cases, and it was an issue that came up previously . . . under Chief Judge Shapiro at the time, and he did [ask] that the IRS [sic] present their authority to represent the IRS and we'd like to do so at this time.

Court: I'm not quite sure—

J. Pansier: There was no authority stated in their answer, as far as the United States on behalf of the Internal Revenue Service answering the allegations. . . . [I]n their answer they did not present their authority to represent the IRS.

Court: . . . So what do you think ought to happen next, Mrs. Pansier?

J. Pansier: We would like to be provided with the authority of the United States to represent the Internal Revenue Service in the adversary proceeding.

Court: Because you don't think the United States can represent the Internal Revenue Service?

J. Pansier: We don't know, that's what we're asking for.

Court: Well you'd better file something in writing on that. Because I'm not dissatisfied at this point.

Adv. No. 18-2129, CM-ECF Doc. No. 10 (audio of August 16, 2018 hearing, at 36:36–39:22). See also Gengler v. I.R.S., No. 10-CV-689, 2010 WL 5463314, at *1 (E.D. Wis. Dec. 29, 2010) ("Where taxpayers are authorized to sue on matters arising out of IRS actions, the United States is the proper party.").

| G. Pansier: | Your Honor, are you making a decision that they represent, they have jurisdiction?  You're going to put that on your lap?  That's fine.  But they have to prove it.  And you know it and I know it and they know it. |
|---|---|
| Court: | Thank you, sir. |
| G. Pansier: | So if you want to take it [and] put it on your lap, go for it. |
| Court: | That's the only point you're making, right? |
| G. Pansier: | Well, I think it's pretty big.  If you want to throw it in the gutter, go ahead. [10] |

*Id.* (audio at 22:42–24:33).

A thoughtful and well-informed observer would view the Court's statements, taken in their proper context, neither as demonstrating that the Court "isn't concerned" about jurisdiction, nor showing a deep-seated and unequivocal antagonism that would render fair judgment impossible.  Instead, such a neutral observer would view the statements plainly to reflect the Court's legal rulings that it had jurisdiction to consider the matter before it and that the United States Attorney was legally authorized to represent the Internal Revenue Service and had standing to move for relief from stay.

### 10. Ordering the Debtors to respond to relevant discovery requests in Adversary No. 18-2222-beh

On October 12, 2018, the United States Trustee commenced Adversary No. 18-2222-beh, *Layng. v. Pansier et al.*, seeking to deny the debtors'

---

[10] Mr. Pansier's lack of respect during this telephone hearing, demonstrated in part by the comments above, prompted the Court to require the debtors to appear at future hearings on contested matters in person.  In their motion to recuse, the debtors assert that the Court should have made this in-person-appearance requirement applicable to *all parties*, not just the Pansiers.  ECF Doc. No. 100, at 11 n.6 ("It should be noted that during the hearing on the United States Motion to Lift the Automatic Stay, Judge Hanan made the claim that the Debtors acted with disrespect toward the Court and ordered them (and no other parties) to appear in person at all future hearings; however, a judge is held to a higher standard to respect the rule of law and her professional responsibility to treat all litigants equally.").  A thoughtful and well-informed observer would not view the lack of an in-person requirement for *other* parties— parties who did not demonstrate a lack of decorum before the Court—to be "unequal" treatment.

discharges for concealment of property and false oaths, among other things. Discovery commenced in early 2019 and discovery disputes eventually ensued.

On June 21, 2019, the Court held a hearing on two of those disputes— the U.S. Trustee's motion to compel the debtors to respond to 15 interrogatories and 18 document requests, and the debtors' motion to compel the U.S. Trustee to respond to 35 of their interrogatories. *See* Adv. No. 18-2222-beh, ECF Doc. No. 43 (audio of June 21, 2019 hearing). At that hearing, the Court spent almost three hours going through each disputed discovery request and then issued a ruling on the record, requiring the debtors to respond to the majority of the U.S. Trustee's discovery requests to which they had objected. The Court also denied the debtors' motion to compel. The Court's ruling was based on the Court's consideration of the facts and arguments presented by the parties, as applied to the relevant law.

In their motion for recusal, the debtors disagree with the outcome of that hearing and the Court's legal determinations regarding discovery, contending:

> For fourteen months, Judge Hanan has shown a great deal of bias toward the Debtors by allowing the Office of the United States Trustee to abuse the discovery process in their adversary proceeding. To date, the Trustee has been provided with over 600 documents, none of which consist of any evidence of any undisclosed assets. The Court continues to protect the United States Trustee to the detriment of the Debtors by ordering them to answer the same interrogatories that have were answered previously, producing documents that have no relevance to their personal assets, and ignoring the Debtor's [*sic*] sworn statements that appear in the record of the case.

ECF Doc. No. 100, at 7.[11]

A thoughtful and well-informed observer would not view the Court's law- and fact-based ruling, while adverse to the debtors, as judicial conduct that displays deep-seated and unequivocal antagonism that would render fair judgment impossible.

---

[11] Despite the amount of disclosure the debtors claim to have made, it was not until the June 21, 2019 hearing that the debtors first clarified there are not one, but two, Fly Slow trusts— which necessitated the U.S. Trustee to amend to his discovery requests to apply specifically to both trusts.

### 11. Disagreement with the Court's discovery rulings at the June 21, 2019 hearing

The next contention in the recusal motion is similar to the last. The debtors first take issue with the Court's discovery rulings at the June 21 hearing—specifically, the Court's rejection of their legal arguments as lacking merit. They frame their allegation at *id.* pp. 7–8 ("[W]hen the Debtors brought to the attention of the Court that the Trustee failed to state *how* their discovery requests were relevant to their complaint and failed to provide evidence of a *substantial need* for the information in order to prepare their case, as required in a motion to compel, their argument was met with deaf ears as if the Debtors were not even present in the court room."). The motion then asserts that the reason for the Court's adverse decisions is the debtors' *pro se* status, rather than a lack of legal merit:

> The Debtors doubt this would have happened if they were represented by counsel, nor would the ongoing abuse of discovery be allowed if they were not self represented. Judge Hanan's unnecessarily demeaning and confrontational attitude toward them calls for her immediate disqualification pursuant to her Oath of Professional Responsibility and 28 U.S.C. §455(a) because pro se litigants clearly do not receive equal justice in her court room.

*Id.* at 8.

The debtors' recusal motion cites no specific facts to support the claim that the Court has displayed an "unnecessarily demeaning and confrontational attitude toward them," other than the out-of-context statements this decision discussed above. *See supra*, sections B.1 (at 7–9), B.7 (at 15–16), B.8 (at 17–19), and B.9 (at 20–22). The motion's claim of partiality against *pro se* litigants is supported only with speculation, *e.g.*, "[d]ebtors doubt this would have happened . . . ."[12] Moreover, the Court's ruling at the June 21, 2019 hearing

---

[12] In fact, at the June 21, 2019 discovery hearing, the Court allowed the debtors *additional time* to provide evidence in support of their assertions that certain discovery requests by the U.S. Trustee were duplicative. *See* Adv. No. 18-2222-beh, ECF Doc. No. 47, at n.3 ("The Court directed the Defendants to provide documents in support of their objections to document requests 2, 3, 4, 6, and 19 (on the basis that the request was asked and answered at the Rule 2004 examination) no later than June 28, 2019.").

was supported with specific findings as to the relevance of each of the U.S. Trustee's discovery requests to which the Court ordered the debtors to respond. *See, e.g.*, Adv. No. 18-2222-beh, ECF Doc. No. 43 (audio of June 21, 2019 hearing, at 39:20–42:07) (the Court providing its rationale for finding the U.S. Trustee's interrogatory numbers 15, 16, and 17 relevant and requiring further response).

The recusal motion adds: "At the end of the [June 21, 2019] hearing when the Debtors informed Judge Hanan during the hearing that they would be filing a motion asking for her recusal; she did not object." This statement is true. The Court's response to Mr. Pansier was, "I'll read what you have to say." Adv. No. 18-2222-beh, ECF Doc. No. 43 (audio at 2:57:10-2:57:12).

A thoughtful and well-informed observer would conclude that the Court's rulings at the June 21, 2019 discovery hearing were based on the facts and law (and a willingness to read any further law submitted), do not evidence a deep-seated and unequivocal antagonism that would render fair judgment impossible, and so do not establish a basis for disqualification.

### 12. Speculation about *ex parte* communications

The final ground raised in the motion to recuse, although not supported by affidavit or other evidence, concerns alleged *ex parte* communications. The debtors' motion states:

> [A]t the hearing on June 21, 2019, the Debtors believe there was *ex parte* communication between Judge Hanan and Attorney Laura D. Steele representing the United States Trustee which is a violation of the Model Code of Judicial Conduct, Canon 3(B)(7). Ms. Steele did not enter the courtroom through the main entrance and it appears that Ms. Steele entered the courtroom through the judge's chambers. When the Debtors asked Ms. Steele if she and the judge traveled together from Milwaukee, she refused to answer.

ECF Doc. No. 100, at 8–9.

In response, counsel for the U.S. Trustee objects and characterizes the movants' assertions as untrue and lacking any good faith basis in fact. The Court agrees—the movants' beliefs and premises as to *ex parte* communication

by the Court are wholly false. Litigants should not proffer speculative, provocative statements "with the apparent goal of creating controversy, baiting the Court and fabricating issues for possible appeal." *In re Olsen*, 358 B.R. 609, 624 (Bankr. S.D.N.Y. 2007).

Counsel for the U.S. Trustee also asserts that such allegations—*i.e.*, "[t]he Debtors' willingness to set forth such foundationless hyperbole"—are sanctionable under Bankruptcy Rule 9011. ECF Doc. No. 104, at 7. Beyond objecting to the present motion, if the U.S. Trustee wishes to seek sanctions for what he views to be frivolous or scandalous conduct, the better approach is to file a motion specifically under Rule 9011, with proper notice and opportunity for response.

The motion to recuse adds a second alleged example of *ex parte* communication:

> Additional *ex parte* communication occurred when Ms. Steele apparently conferred with Judge Hanan concerning the scheduling of the next hearing. The Debtors received a letter from Ms. Steele on July 6, 2019 informing them that "the Court has set a telephone status conference on July 11, 2019," even though as of this writing, the Debtors have not received the formal notice from the Court that a conference had been scheduled.

ECF. Doc. No. 100, at 9. As counsel for the U.S. Trustee notes in her objection, obtaining a hearing date for a future status conference was "a procedure that was discussed in open court at the June 21, 2019 hearing." ECF Doc. No. 104, at 7. That discussion took place with both debtors present. In any event, calling the Court's chambers staff to obtain a hearing date for a matter is permissible. The Court's own Local Rules *require* parties to call the Court staff to obtain hearing dates for certain matters. *See* Local Rules 9013.2(a); 9013.3(a).

A thoughtful and well-informed observer would conclude that there is no evidence that the Court engaged in any *ex parte* communications with counsel for the U.S. Trustee on the day of the motion to compel hearing, and that a phone call to chambers staff to obtain a hearing date is routine, permissible

contact provided by our district's Local Rules—rules publicly available on the Court's website—and not a basis for disqualification.

## CONCLUSION

The motion to recuse fails to establish any objective basis for concluding that a reasonable person would perceive a significant risk that this Court will resolve matters regarding these debtors on any basis other than the merits. The motion includes multiple statements out of context, misstatement of the law, hyperbole and speculation. No doubt these debtors have been disappointed when the Court has concluded that the law and the facts require a decision adverse to them. Appeal was an available remedy to challenge legal rulings; they have invoked that remedy but once over 11 adverse rulings and orders.[13] Their motion omits those rulings or orders of the Court that were favorable to the debtors, but given this already-lengthy decision, those need not be described in any detail.[14] The debtors' motion—a one-sided telling of the procedural history of this case and the related adversary proceedings— "focus[es] on only one aspect of the story," *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). Such a single-faceted prism eclipses what should be a "well-informed" review based on all of the surrounding facts and circumstances, *see Hook v. McDade,* 89 F.3d 350, 354 (7th Cir. 1996).

---

[13] The Court has issued 11 interlocutory and final orders over the debtors' objections (or otherwise adverse to them) in this case and the related adversary proceedings: ECF Doc. No. 47 (extending the deadline for the U.S. Trustee and Chapter 7 trustee to file an action under 707(b) or 727); Doc. No. 48 (granting U.S. Trustee's Rule 2004 request); Doc. No. 60 (denying debtors' motion for sanctions against the IRS); Doc. Nos. 85 and 87 (granting the United States' motion to lift the stay); Doc. No. 93 (granting, only in part, debtors' motion for reconsideration); Doc. No. 98 (confirming termination of stay as to ACAR Leasing); Adv. No. 18-2129, ECF Doc. Nos. 9 and 13 (granting declaratory relief to the U.S. Trustee); Doc. No. 19 (denying debtors' motion for leave to amend); Doc. No. 24 (denying debtors' request to question counsel for the IRS); Adv. No. 18-2222, ECF Doc. No. 32 (denying debtors' motion for a protective order); and Doc. No 47 (granting U.S. Trustee's motion to compel, denying debtors' motion to compel).

[14] *See, e.g.*, ECF Doc No. 93 (granting in part debtors' request for reconsideration); Adv. No. 18-2129, ECF Doc. No. 17 (denying IRS request for Rule 2004 exam); Adv. No. 18-2222, ECF Doc. No. 47, at n.3 (noting that, at the June 21, 2019 discovery hearing, the Court allowed the debtors additional time to provide evidence in support of their assertions that certain discovery requests were duplicative requests).

Precedent is clear that adverse rulings do not constitute a basis for recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. As set out above, the Court's rulings in this case and the related adversary proceedings were not so unfavorable that fair judgment appears impossible. Nor were the Court's statements in its rulings or during the various hearings described above so extraordinary that they would lead a reasonable person, knowing all the facts and context, to believe that the assigned judge has formed an opinion so extreme that fair judgment appears impossible, or that the judge is unduly biased against the movants.

The Court is mindful that "'a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified.'" *In re Stoller*, 374 B.R. 618, 621 (Bankr. N.D. Ill. 2007) (quoting *Laird v. Tatum,* 409 U.S. 824, 837 (1972)). Granting the debtors' motion in these circumstances would set a dangerous precedent, not just in this case. To interpret the recusal statute as loosely as the debtors urge would create a system where unhappy litigants could demand recusal by any judge who issues one or more adverse rulings or otherwise disagrees with a litigant's (meritless) legal theories. "The Court is charged with the responsibility of making independent rulings based on its consideration of the applicable facts and law. No litigant has the right to shop for a judge that he thinks may be more sympathetic to his cause or more favorably disposed to his arguments, nor does any litigant have the right to misuse for short-term tactical advantage recusal statutes that are meant to assure the public that the federal judiciary is impartial." *In re Olsen*, 358 B.R. at 625 (citing *Ex parte American Steel Barrel Co.,* 230 U.S. 35, 44 (1913) (recusal statute "was never intended to enable a discontented litigant to oust a judge because of adverse rulings made . . . .").

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the debtors'
motion to recuse or disqualify the presiding judge is DENIED.

Dated: August 5, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge